## 76813. PALMER et al. v. MITCHELL COUNTY FEDERAL SAVINGS & LOAN ASSOCIATION.
### (377 SE2d 4)

Banke, Presiding Judge.

The appellants sued the appellee savings and loan association to recover $24,031.07 in insurance proceeds which the appellee had received from a casualty insurer. These proceeds had been paid in accordance with the terms of a policy of hazard insurance the appellants had purchased covering certain real property which was subject to a security deed held by the appellee. Prior to receiving the insurance benefits, the appellee had acquired ownership of the property through the exercise of the power of sale provisions contained in the security deed. This appeal is from an order granting the appellee's motion for summary judgment and denying the appellants' motion with respect to the relief sought in the complaint.

As required by the terms of the security deed, the appellants had designated the appellee as primary loss-payee under the insurance policy, by virtue of its status as secured lender. The security deed specified that in the event the appellee acquired the property by foreclosure, it would also acquire "all right, title and interest of borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the property prior to the sale or acquisition . . . to the extent of the sums secured by this deed immediately prior to such sale or acquisition." Also, the insurance contract itself contained what is known as a "New York standard" or "union" mortgage clause, providing, in pertinent part as follows: "Loss, if any, under this policy, shall be payable to the mortgagee . . . , and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated . . . by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property. . . ."

In August of 1985, during the term of the policy, the property was damaged by fire. In September of 1986, a foreclosure sale was

conducted at which the appellee acquired ownership of the property by bidding in the amount of the appellants' remaining indebtedness, which was at that time $46,022.46. Several months later, the casualty insurer paid the appellee the $24,031.07 which is the subject of the present action. The appellee ultimately resold the property for $59,252.16, but only after expending $39,044.55 on repairs and improvements. Thus, the total amount expended by the appellee to acquire the property and prepare it for resale exceeded the sum of the sale price and the insurance proceeds by approximately $1,784. The appellants nevertheless contend that they, rather than the appellee, were entitled to the insurance proceeds. *Held*:

It is well settled that a "New York standard" or "union" mortgage clause such as the one appearing in the insurance policy at issue in this case " 'create[s] a separate and distinct contract on the [secured lender's] interest and . . . give[s] it an independent status.' " *Cherokee Ins. Co. v. First Nat. Bank of Dalton*, 181 Ga. App. 146, 147 (351 SE2d 473) (1986). See also *Ins. Co. of North America v. Gulf Oil Corp.*, 106 Ga. App. 382 (1) (127 SE2d 43) (1962); 5A Appleman Ins. Law & Practice § 3403, p. 302 (1970); 5 Couch on Ins., §§ 29:76-29:78 (2d Rev., 1984); 8 Couch on Ins., § 37A:743 (2d Rev., 1985). However, it is also well settled that the secured lender's interest in the property exists only to the extent of the indebtedness secured thereby and that he is consequently under an obligation to account to the borrower for any surplus received upon foreclosure. See Pindar, Ga. Real Est. Law, Vol. 2 § 21-88, p. 372 (3rd ed.), and cases cited therein.

A majority of those jurisdictions which have addressed the issue have held "that if subsequent to the [casualty] the mortgagee has had its debt satisfied by purchase at foreclosure either by the mortgagee or a stranger, even by its bidding in of the outstanding debt, the mortgagee's rights under the [casualty insurance] policy are terminated." *Whitestone Savings &c. Assn. v. Allstate Ins. Co.*, 28 NY2d 332 (270 NE2d 694, 696 (2)) (1971). This rule is premised on the principle that the secured lender's acquisition of the property by bidding in the amount of the remaining indebtedness at the foreclosure sale constitutes a complete satisfaction of the debt, thereby extinguishing its interest in the insurance proceeds. In *Calvert Fire Ins. Co. v. Environs Dev. Co.*, 601 F2d 851 (5th Cir. 1979), the United States Court of Appeals for the Fifth Circuit ruled that this rule also obtains under Georgia law. Accord *Mid-State Homes Inv. Corp. v. Wiggins*, 217 Ga. 372 (3) (122 SE2d 106) (1961) (foreclosure not permitted where insurance proceeds received by mortgagee were sufficient to satisfy indebtedness on property). Compare *Fed. Nat. Mtg. Assn. v. Hanover Ins. Co.*, 243 Ga. 609 (255 SE2d 685) (1979), and *Nat. Security &c. Co. v. Eureka Fed. Savings &c. Assn*, 188 Ga. App. 693 (373 SE2d 811) (1988) (both holding mortgagee entitled to insurance proceeds where

foreclosure occurred prior to fire).

In the present case, the appellee lender contends that, notwithstanding the general principles of insurance law which might otherwise apply, it acquired an absolute contractual right to the insurance proceeds as the result of the express statement in the security deed that its interest in such proceeds would survive foreclosure "to the extent of the sum secured by this deed immediately prior to such sale or acquisition." We note that the "New York standard" or "union" insurance clause contained in the insurance policy similarly purported to give the appellee an absolute right to the insurance proceeds irrespective of whether the indebtedness on which its insurable interest was based had already been satisfied, yet that clause was unenforceable to the extent that it conflicted with the policy of the law limiting the secured lender's interest in the insurance proceeds to the balance owed on the indebtedness. See *Calvert Fire Ins. Co. v. Environs Dev. Co.*, supra. Thus, it is at best questionable whether a similar provision appearing in the security deed would be enforceable to the extent that it conflicted with this policy of the law. However, regardless of whether, in theory, the security deed at issue in this case could be enforced in such a manner as to afford the appellee a windfall over and above the full satisfaction of the appellants' loan indebtedness, we hold that the trial court was correct in ruling that the appellants were not entitled to any recovery, for the reason that the appellants have failed to advance any theory under which the appellee (as opposed to the insurer) could be held liable to them for the benefits due under the policy. Compare *Calvert Fire Ins. Co. v. Environs Dev. Co.*, supra, which was a declaratory judgment action filed by the insurer.

While it is true that an action for money had and received will lie against a defendant to recover funds received by him from a third person which ought in equity and good conscience to have been paid to the plaintiff, the plaintiff's right of recovery in such an action is predicated on his ability to show that the defendant would be unjustly enriched if allowed to retain the money. See generally *Bob Parrott, Inc. v. First Palmetto Bank*, 133 Ga. App. 447 (4) (211 SE2d 401) (1974). The appellee in this case has conclusively negated any allegation of unjust enrichment by presenting uncontroverted evidence that it suffered a net loss on its acquisition and resale of the property, even after application of both the insurance proceeds and the full amount of its foreclosure bid. Under such circumstances, we are aware of no basis upon which the appellants might be entitled to recover those proceeds in an action against the appellee; and we consequently hold that the trial court did not err in granting the appellee's motion for summary judgment.

*Judgment affirmed. Birdsong, C. J., concurs and Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I cannot concur in that portion of the opinion related to the theoretical viability of an unjust enrichment claim.

As shown by the complaint as amended, the theory of the Palmers' suit is that they are entitled to the insurance proceeds which the mortgagee[1] scheduled in the policy received from the insurance company from which the Palmers purchased the policy.

The policy includes the New York standard Mortgage Clause which is quoted in pertinent part in the majority opinion. Certain provisos follow, such as that the premium must be kept up, notice of hazard changes must be given, and the insurer has the right of subrogation to claims of the mortgagee against the mortgagor or owner to the extent of payment to the mortgagee.

The mortgagee's interest must be determined as of the date of the loss, August 4, 1985. *Pacific Ins. Co. v. R. L. Kimsey Cotton Co.*, 114 Ga. App. 411, 416 (3) (151 SE2d 541) (1966). At that time, the mortgagee was entitled to the proceeds ultimately paid because the value of the lender's security had been diminished due to fire, a covered peril.

This entitlement was not waived or forfeited by later foreclosing on the security (the entire property, not just the buildings) when the borrowers defaulted in payments on the debt. The deed to secure debt, containing the provision quoted in the majority opinion, constituted a contract between the parties to this case and governs the entitlements of each.

Thus, according to their agreement, the passage of the insurance proceeds was already in contemplation of the parties, at foreclosure, as the fire had already occurred. That provision was part of the security required by the lender for its loan. *Calvert Fire Ins. Co. v. Environs Dev. Co.*, 601 F2d 851, 855 (5th Cir. 1979), alludes to this when it says that "[lender's] status as loss-payee gives it no less a separate contractual remedy than would an additional security deed on other property."

By the plaintiffs' own hand, they agreed that the lender's right to the insurance proceeds would remain *after* foreclosure, at least in the amount of the debt existing *before* foreclosure. That amount being $46,022.46, and the insurance proceeds being $24,031.07, plaintiffs' claim fails as a matter of law.

Although the foreclosure extinguished the debt for which the property in its undamaged state was security in the first place, paying it off with the loan association's funds, the acquisition of the property

---

[1] Not a true mortgagee, because the deed to secure debt expressly stated the conveyance was a deed passing title and not a mortgage, but the insurance policy refers to the lender as mortgagee or trustee.

in its damaged state carried to the lender as purchaser the right to the insurance proceeds because of the provision in the security deed. Acquisition by the lender did not extinguish its right to the insurance proceeds but rather preserved it. This was foreclosure by sale and not strict foreclosure. That is, transfer of the property itself did not extinguish the debt, because the property was paid for by the purchaser. The damaged condition of the property diminished its value and had no effect on or relationship to the amount of the debt, which stayed the same, and that is precisely what the lender sought to protect itself against by the provision in the security deed.

Although it is not relevant to its right to the insurance proceeds, the loss payee demonstrated that this contractual arrangement did not result in unjust enrichment or "double payment." It showed that it had to expend not only the insurance proceeds but more to sell the property in an effort to recoup the funds it had paid out to extinguish the loan debt, resulting in a net loss. So as it turned out, the amount of the debt, which was the price paid for the property at foreclosure, was higher than the restored value of the property. This, of course, would not occur if someone other than the lender acquired the property at the foreclosure, and that is why the security deed limits the lender/forecloser's right to pre-foreclosure insurance proceeds to instances in which the lender is the purchaser.

The policy, which is a contract between plaintiffs here and their insurance company, and the security deed, which is a contract between plaintiffs and their lender, are in tandem. In both contracts, the plaintiffs agreed that the lender would be entitled to the insurance proceeds even if it acquired the property by purchase at foreclosure after the peril occurred.

DECIDED OCTOBER 25, 1988 —
REHEARING DENIED DECEMBER 15, 1988 —

*Frank C. Vann*, for appellants.
*Kirbo & Bridges, Bruce W. Kirbo, Randall E. Chew*, for appellee.