### A99A0062. CIT GROUP/EQUIPMENT FINANCING, INC. v. NORTHBROOK PROPERTY & CASUALTY INSURANCE COMPANY et al.
(515 SE2d 845)

Judge Harold R. Banke.

CIT Group/Equipment Financing, Inc. ("CIT") appeals the summary judgment awarded to Northbrook Property & Casualty Insurance Company ("Northbrook") on CIT's breach of contract claim.

The underlying case arose after Kevin Powell entered into a Security Agreement — Conditional Sale Contract with Pioneer Machinery, Inc. ("Pioneer") on October 27, 1994, to purchase a piece of machinery known as a Timberjack feller buncher. After making a cash down payment of $45,400, Powell became obligated to pay $232,011.36 over 48 months. After the sale, Pioneer assigned the sales contract and financing agreement with all rights and remedies to CIT.

The security agreement required Powell to procure and maintain insurance against all risks of loss or physical damage to the equipment. Under the express terms of the security agreement, CIT became Powell's "attorney in fact" and obtained the rights to make, settle, and adjust any claims made under an insurance policy and the power to endorse Powell's name on any payment of an insurance claim.[1] Powell purchased an insurance policy with a limit of $227,000 from Northbrook on which CIT was designated as the loss payee.

About five months later, on April 15, 1995, a fire substantially damaged or destroyed the machinery, and Powell promptly notified Northbrook, submitting a proof of loss for $211,000. Following an investigation, Northbrook refused to pay Powell's claim, asserting that Powell either had intentionally set the fire or had directed the fire to be intentionally set. Northbrook also denied the claim on the

---

[1] Buyer [Powell] hereby assigns to Seller [CIT after Pioneer assigned its rights to CIT] any monies which may become payable under any such policy of insurance and irrevocably constitutes and appoints Seller as Buyer's attorney in fact (a) to hold each original insurance policy, (b) to make, settle and adjust claims under each policy of insurance, (c) to make claims for any monies which may become payable under such and other insurance on the Collateral . . . and (d) to endorse Buyer's name on any check, draft or other instrument received in payment of claims or returned or unearned premiums under each policy and to apply the funds to the payment of the indebtedness owing to Seller.

basis that Powell had misrepresented and concealed material facts concerning the loss.

After Northbrook refused to cover the loss, CIT and Pioneer sued Powell and Northbrook. CIT claimed that as of March 14, 1997, Powell owed $213,636.71, and an additional $57,000 in late fees plus attorney fees. Powell cross-claimed as Kevin Powell d/b/a Kevin Powell Logging ("Powell") against Northbrook seeking $227,000 plus consequential damages. Northbrook moved for summary judgment against Pioneer and CIT and against Powell on the cross-claim. Determining that CIT as the loss payee was not entitled to bring an action in its own name because its rights were merely derivative of Powell's rights, the trial court granted summary judgment to Northbrook. The court denied summary judgment in part to Northbrook on Powell's cross-claim. CIT appeals. *Held*:

In its sole enumeration of error, CIT contends that the trial court erred in granting summary judgment to Northbrook based on the court's finding that Powell had some interest in the policy proceeds. CIT asserts that the undisputed evidence shows that it was entitled to any and all policy proceeds.

CIT obtained rights to the insurance proceeds as the loss payee under the insurance contract between Powell and Northbrook and also as the assignee under the terms of the sales contract and security agreement. See *Palmer v. Mitchell County Fed. Sav. &c. Assn.*, 189 Ga. App. 646 (377 SE2d 4) (1988) (both the insurance contract and the security deed entitled the lender to the insurance proceeds). As the designated loss payee under Powell's insurance policy, CIT was entitled to all of the insurance proceeds up to the total amount of the debt secured by the fire-damaged collateral. *Beasley v. Agricredit Acceptance Corp.*, 224 Ga. App. 372, 374 (2) (480 SE2d 257) (1997). Powell's interest in the insurance proceeds existed, if at all, only to the extent that the insurance proceeds exceeded the debt he owed to CIT. See *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166, 170 (2) (430 SE2d 75) (1993).

The right of an insured, like Powell, to insurance proceeds, claimed pursuant to an insurance contract containing a loss payee endorsement, is determined at the time of loss and to the extent of the insured's established actual loss. See *Ga. Farm &c. Ins. Co. v. Brewer*, 202 Ga. App. 127, 128-129 (413 SE2d 770) (1991). Where the evidence demonstrates that the amount of debt is in excess of the insurance proceeds, a debtor has no interest in the policy proceeds. *Canal Ins. Co. v. Savannah Bank &c. Co.*, 181 Ga. App. 520, 523 (4) (352 SE2d 835) (1987).

But, here, the evidence was disputed or incomplete as to the actual amount of the insurance proceeds at issue or the amount of the established actual loss. The policy required Northbrook to pay

only the least of the following calculations: (1) the actual cash value of the machine at the time of the fire; or (2) the cost to repair or replace the damaged machine with that of like kind; or (3) the policy limit. Northbrook offered no evidence to establish the machine's actual cash value at the time of the fire or the cost to repair or replace it. According to Powell, he had the machine examined after the fire, and he testified, "[t]he machine is not totaled. It can be repaired pretty easy [sic]." Northbrook offered no evidence that notwithstanding the alleged misconduct of Powell, it intended to pay $227,000, the policy limit. Instead, Northbrook merely contended that Powell's interest was the amount sought by Powell nearly two years after the fire, $227,000 plus consequential damages, the total of Powell's cross-claim. See *Brewer*, 202 Ga. App. at 128 (right of mortgagee to insurance proceeds determined at time of the loss). In these circumstances, even assuming arguendo that this was a covered event, it is not possible to determine the amount of the insurance proceeds at issue. Nor did the record establish the amount of Powell's indebtedness under the sales contract and security agreement as of the date of loss. In the absence of this information, it cannot be said as a matter of law that CIT lacked standing to sue in its own right. See *Canal Ins. Co.*, 181 Ga. App. at 523 (4). In light of these disputed material facts and because it cannot be said that CIT would not be entitled to recover under any discernible circumstances, we must reverse. *Williams v. Dept. of Corrections*, 224 Ga. App. 571, 572 (481 SE2d 272) (1997); *Rice v. Huff*, 221 Ga. App. 592 (472 SE2d 140) (1996).

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED APRIL 7, 1999.

*Chambless, Higdon & Carson, Emmitte H. Griggs, David N. Nelson*, for appellant.

*Swift, Currie, McGhee & Hiers, Stephen M. Schatz*, for appellees.